UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| MIGUEL LUCAS,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO; MARK GUSTAFSON; and DOES 1-10,<br><br>　　　　　　　　　　Defendants. | Case No.: 20-CV-1735-CAB-JLB<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>[Doc. No. 8] |
|---|---|

This matter is before the Court on Defendants County of San Diego and Mark Gustafson's motion to dismiss Plaintiff's first amended complaint. [Doc. No. 8.] The motion has been fully briefed and the Court finds it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, Defendants' motion to dismiss is **DENIED**.

**I.　BACKGROUND**

Plaintiff Miguel Lucas filed this motion against Defendants County of San Diego, Mark Gustafson, and DOES 1 to 10[1] on September 3, 2020. [Doc. No. 1.] After

---

[1] Pursuant to the FAC, DOES 1 to 10 refers to "the other individual Sheriff's Deputies who are responsible for Plaintiff's injuries." [Doc. No. 6 ¶ 17.] Plaintiff also refers to such Defendants as "DOE Deputy/Nurse Defendants." [*Id.*]

1

Defendants filed a motion to dismiss Plaintiff's original complaint on December 1, 2020, Plaintiff filed the First Amended Complaint ("FAC") on December 22, 2020, thereby mooting Defendants' motion. [Doc. Nos. 5, 6.] The FAC asserts claims for: (1) Violation of the Fourteenth Amendment by Objective Indifference, brought against Defendants Gustafson and DOES 1-10 under 42 U.S.C. § 1983; (2) Violation of the Fourteenth Amendment by Inadequate Mental Health Program, brought against the County of San Diego under 42 U.S.C. § 1983; (3) Negligence, brought against all Defendants; and (4) Intentional Infliction of Emotional Distress, brought against all Defendants. [Doc. No. 6 ¶¶ 20–84.]

Plaintiff alleges in the FAC that on June 4, 2019, while detained in San Diego County Central Jail's general population module awaiting trial, he was attacked without provocation by another inmate named Harmon. [*Id.* ¶¶ 1-3.] Harmon allegedly attacked Plaintiff for at least fifteen minutes, eventually putting him in a chokehold and biting off a portion of Plaintiff's cheek. [*Id.* ¶ 3.] Plaintiff alleges that Harmon was a "Level 5" inmate[2] who was improperly housed in the general population module of the jail because the jail was understaffed and did not have enough deputies to properly monitor high-risk inmates. [*Id.* ¶¶ 4, 8.] According to Plaintiff, Harmon was "initially flagged as a gang member in the Jail Inmate Management System," and therefore should not have been housed in the general population module pursuant to jail policy. [*Id.* ¶ 5.] Plaintiff also makes several allegations that Defendants Gustafson and DOE deputies were on notice of Harmon's declining mental health and increasing aggression prior to the attack: (1) Harmon's family contacted the jail to inform staff that Harmon was "not in his right mind and had been acting violent towards his family" before his arrest [*Id.* ¶ 7]; (2) various inmates informed DOE Deputy 1 that Harmon needed mental health treatment [*Id.* ¶ 2]; (3) Plaintiff's cellmate told DOE Deputy 2 that Harmon was "acting aggressive and attempting

---

[2] Plaintiff alleges that "Level 5" is the highest security level at Central Jail and is reserved for the most violent inmates. [Doc. No. 6 ¶ 24.]

to fight with other inmates" [*Id.*]; and (4) Harmon had been reassigned to the general population module "because he was acting aggressive towards other inmates in the initial housing module he was assigned to" [*Id.* ¶ 5]. Nevertheless, Plaintiff contends that Defendants took no action to separate Harmon from other inmates or prevent any future attack, instead placing him in general population housing. [*Id.* ¶ 32.]

Plaintiff claims that once the attack by Harmon began, Defendants Gustafson and DOE deputies watched the attack on security monitors but did not intervene for fifteen minutes, while other inmates called for the deputies and banged on the module windows. [*Id.* ¶ 3.] After the attack, Gustafson allegedly told Plaintiff that he saw the fight on the monitors and that Plaintiff "put up a nice fight." [*Id.* ¶ 4.] Plaintiff also alleges that jail deputies posed for photos with the portion of Plaintiff's cheek on the floor that Harmon had bit off during the attack. [*Id.* ¶ 10.]

Following the attack, Plaintiff was taken to the Tri-City emergency room where he was evaluated by P.A. Jackie Luu. [*Id.* ¶ 9.] P.A. Luu ordered a follow-up appointment for Plaintiff to meet with a plastic surgeon in one to two days and instructed jail medical staff to follow a specific wound care regimen. [*Id.*] Plaintiff alleges that despite being detained for an additional three months, jail medical staff never arranged for his surgical consult and failed to follow P.A. Luu's wound care orders. [*Id.*] As a result, Plaintiff suffered two infections to the wound and now has a "massive keloid scar on his face." [*Id.*]

On January 5, 2021, Defendants moved to dismiss Plaintiff's FAC in its entirety. [Doc. No. 8.] Defendants argue that the FAC should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and that Plaintiff's references to various suicides that allegedly occurred in San Diego County jails should be stricken under Federal Rule of Civil Procedure 12(f). [*Id.*]

## II. LEGAL STANDARD

The familiar standards on a motion to dismiss apply here. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

### III.  DISCUSSION

Defendants move to dismiss Plaintiff's FAC for the following reasons: (1) Plaintiff pled inconsistent facts between his original complaint and the FAC;[3] (2) Plaintiff cannot establish objective deliberate indifference to his Fourteenth Amendment rights by Defendants; (3) Plaintiff cannot establish causation between Defendants' actions and his injuries; (4) Gustafson is entitled to qualified immunity from liability; and (5) Plaintiff cannot establish that his injuries were caused by any unlawful County policy or custom as required to sustain a derivative municipal liability claim under § 1983 (the "*Monell*" claim). [Doc. No. 8-1.] The Court analyzes the sufficiency of each of Plaintiff's claims in turn.

### a.  42 U.S.C. § 1983 Claim Against Gustafson and DOES 1-10

Plaintiff's first claim brought under 42 U.S.C. § 1983 for violation of the Fourteenth

---

[3] The Court disagrees with Defendants' contention that Plaintiff's allegations in the original complaint and the FAC are "impossible to reconcile" or "clearly contradictory." [Doc. No. 8-1 at 13-14.] The allegations in the FAC are generally consistent with those in Plaintiff's original complaint.

Amendment alleges that Defendants Gustafson and DOE Deputy/Nurse Defendants 1-10 violated (1) his right to be protected from violence by other inmates and (2) his right to receive adequate medical care while in custody. [Doc. No. 6 ¶¶ 20-42.]

### i. Claim for Violation of Right to Protection From Other Inmates

Pretrial detainees who have not been convicted of any crime have a due process right under the Fourteenth Amendment to be free from violence from other inmates. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners because corrections officers have stripped the inmate of virtually every means of self-protection and foreclosed their access to outside aid." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (internal quotations omitted). A pretrial detainee bringing a Fourteenth Amendment claim against an individual officer for failing to protect him from violence while in custody must establish the following elements:

> "(1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries. With respect to the third element, the defendant's conduct must be objectively unreasonable."
>
> *Id.* at 1071.

Plaintiff alleges that Defendants Gustafson and DOE deputies knew Plaintiff was at a substantial risk of being assaulted by Harmon yet failed to take reasonable available measures to abate the risk. [Doc. No. 6 ¶¶ 8, 24.] Plaintiff alleges that a reasonable deputy would have appreciated the risk of harm that Harmon presented to other inmates if placed in general population housing, but Defendants placed Harmon there anyway because "the jail was understaffed and did not have sufficient deputies to monitor ad-seg [administrative-segregation] inmates" like Harmon. [*Id.* ¶¶ 8, 24-32.] Plaintiff lists reasonable measures that were available to the deputies, such as moving Harmon out of

general population housing and into an isolated cell or escorting him to medical care, that would have prevented Harmon's attack. [*Id.* ¶ 32.] He also claims that a reasonable officer would have intervened immediately once they became aware of an attack on another inmate. [*Id.*] Plaintiff further alleges that housing Harmon in the general population module violated jail policies that require "assaultive inmates to be housed in ad-seg or isolated cells" and that forbid "housing gang-affiliated inmates like Inmate Harmon in general population modules." [*Id.* ¶ 23.] Finally, Plaintiff alleges that Gustafson failed to timely intervene when he initially saw the attack occur on the security monitors, resulting in Plaintiff's permanent disfigurement and other injuries. [*Id.* ¶ 32.]

Plaintiff has plausibly stated a claim for violation of his Fourteenth Amendment right to be protected from violence by other inmates while in custody. Plaintiff plausibly alleges that despite various indicators that Harmon was unstable and becoming increasingly aggressive toward other inmates (of which Defendants were aware), Defendants made the intentional decision to place Harmon in general population housing. As a result, Plaintiff[4] was put at substantial risk of suffering serious harm—and in fact did suffer such harm from Harmon's attack. Plaintiff also states what a reasonable officer in the circumstances would have done to prevent or promptly intervene in the attack. [*Id.* ¶ 32.] Thus, Plaintiff alleges, Defendants' failure to take these steps was objectively unreasonable. This is further established by the allegation that Defendants' actions violated the Sheriff Department's Security and Control policies, which require deputies to prevent "foreseeable inmate-on-inmate violence." [*Id.* ¶ 33.]

---

[4] Defendants argue that Plaintiff's claim must be dismissed because he fails to allege that Defendants' actions put Plaintiff specifically at risk of harm, as "there was no prior indication that Harmon intended to attack Plaintiff." [Doc. No. 8-1 at 16.] However, there is no requirement under *Castro* that solely the plaintiff, and no other inmates, be placed at risk. Plaintiff has plausibly alleged that because Defendants placed Harmon in the general population module, Plaintiff was subjected to conditions of confinement that put him (and all other general population inmates) at substantial risk of harm. The inquiry under *Castro* focuses on the plaintiff's conditions of confinement, which in this case would apply to all inmates housed in general population with Harmon.

Defendants argue that Plaintiff fails to allege that Gustafson had any decision-making authority over "the conditions of where Harmon or Plaintiff were housed" or that Gustafson had the ability to intervene in Harmon's attack on Plaintiff,[5] so Plaintiff cannot establish causation between Gustafson's actions and Plaintiff's harm. [Doc. No. 8-1 at 16.] However, Plaintiff alleges that DOE deputies, including Gustafson, were "in charge of Module 5-B" and were "obligated to keep the module safe." [Doc. No. 6 ¶ 6.] Plaintiff's allegations are sufficiently plausible to support a reasonable inference that as the deputies "in charge" of the general population module, Defendants had authority to make decisions about the conditions of confinement in that module.

Defendants also argue that Plaintiff cannot establish causation because Harmon's attack is an unforeseeable "superseding cause that breaks the chain of causation" between Defendants' actions and Plaintiff's injuries. [Doc. No. 8-1 at 17.] Defendants' argument ignores twenty-seven-year-old Supreme Court precedent that prison officials have a duty to protect prisoners from violence by other inmates because officials "have stripped the inmate of virtually every means of self-protection and foreclosed their access to outside aid." *Farmer*, 511 U.S. at 833. Any risk of harm Plaintiff faced while in custody was created by Defendants' decisions as to Plaintiff's conditions of confinement. Therefore, a causal link exists between those conditions and any resulting foreseeable violence. Defendants had a duty to protect Plaintiff from an attack by Harmon, and Plaintiff plausibly alleges that Defendants' failure to fulfill that duty by taking reasonable preventative measures resulted in Harmon's eventual attack. Accordingly, Plaintiff's allegations are legally sufficient to establish a § 1983 claim against Defendants for failure to protect him from violence while in custody.

---

[5] Defendants argue that Plaintiff's claim fails because he has not alleged that Gustafson's fifteen-minute delay in intervening "worsened or exacerbated any of Plaintiff's injuries." [Doc. No. 8-1 at 18.] Plaintiff's factual allegations support a reasonable inference that had a guard intervened at the first possible instance, Plaintiff's injuries would not have been as severe as they were after enduring fifteen minutes of uninterrupted physical attack by a mentally unstable, increasingly violent inmate.

### ii. Claim for Violation of Right to Adequate Medical Care

Plaintiff also alleges that he received inadequate medical care for his injuries sustained in the attack by Harmon. "Claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. City of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The plaintiff must establish the same four elements articulated in *Castro* (as stated above) and must "prove something more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* at 1125 (internal citations omitted).

Plaintiff's factual allegations plausibly state all elements required by *Castro*. Plaintiff alleges that deputies and medical staff at Central Jail were "clearly instructed" by P.A. Luu that Plaintiff required surgical intervention and daily wound care in order for his injuries to heal properly. [Doc. No. 6 ¶ 35.] However, Plaintiff states that he never received a surgical consult as ordered by P.A. Luu. [*Id.* ¶ 9.] Further, Defendants allegedly failed to change Plaintiff's wound dressing daily, thereby causing two infections to the wound. [*Id.* ¶ 38.] Plaintiff also contends that he filed three grievance forms requesting proper medical care, which Defendants ignored. [*Id.* ¶ 30.] Plaintiff specifies that a reasonable nurse in "DOE Nurse 1's" position would have followed P.A. Luu's orders, knowing that Plaintiff was "at risk of infection and impaired skin integrity" if his wound was not properly cared for. [*Id.* ¶¶ 38-39.] As a result of Defendants' failure to provide adequate medical care, Plaintiff claims that he suffered a "permanent disfigurement on his face," two infections to the wound site, and "emotional and mental distress resulting from the incident." [*Id.* ¶ 40.] Based on these allegations, Plaintiff has adequately stated a claim that survives the motion to dismiss stage.

Accordingly, Defendants' motion to dismiss Plaintiff's claim brought under 42 U.S.C. § 1983 against Defendants Gustafson and DOES 1-10 is **DENIED**.

///

///

### b. 42 U.S.C. § 1983 Claim Against County of San Diego

Plaintiff's second claim brought under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment alleges that Defendant County of San Diego had a custom or policy of inadequate mental health programs for inmates, which ultimately led to Plaintiff's harm. [*Id.* ¶¶ 63-64.] In *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978), the Supreme Court held that a municipality may be liable for a § 1983 violation if the plaintiff can show that a "policy or custom" of the municipality led to his injury. This policy or custom must be a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion). The plaintiff must also demonstrate that the policy or custom was adhered to with "deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). This deliberate indifference standard is "always an objective inquiry." *Castro*, 833 F.3d at 1076. For example, a plaintiff can establish deliberate indifference by showing that "the facts available to city policymakers put them on actual or constructive notice that the particular omission [of adequate training or programs] is substantially certain to result in the violation of the constitutional rights of their citizens." *City of Canton*, 489 U.S. at 396.

Plaintiff alleges that the County is liable for his harm because it was "on notice that its mental health policies were constitutionally inadequate, yet failed to improve" them, resulting in Harmon's improper assessment, placement, treatment, and ultimate "breakdown in attacking [Plaintiff]." [Doc. No. 6 ¶¶ 46-47, 65.] As evidence of the County's alleged "policy or custom" of inadequate mental health treatment for inmates, Plaintiff cites to a report published by Disability Rights California regarding San Diego County jails. [*Id.* ¶ 45.] The report Plaintiff cites found that the County's jail system "subjects inmates with mental health needs to a grave risk of psychological and other harms by failing to provide adequate mental health treatment" until their condition deteriorates into "self-harm or having an acute breakdown." [*Id.*] Plaintiff also cites to at least ten

publicly reported instances of inmates committing suicide while imprisoned in San Diego County jails as evidence of the County's "well-established, and long-lasting, pattern of apathy towards mental health inmates." [*Id.* ¶¶ 49-62.]

Plaintiff has sufficiently alleged that the County of San Diego has an inadequate policy concerning inmates' mental health, and that the inadequacy of that policy resulted in Harmon being placed in the general population module instead of receiving treatment for his mental health issues. Plaintiff alleges that because of Defendants' failure to summon care for Harmon, Harmon's mental condition continued to worsen, culminating in his attack on Plaintiff. [*Id.* ¶ 46.] Further, Plaintiff plausibly establishes deliberate indifference by citing to the ten instances of inmates committing suicide after jail officials were made aware of the inmates' mental health issues and failed to provide them with proper treatment. [*Id.* ¶¶ 49-62.] Plaintiff alleges that based on these events, the County was on notice of the inadequacy of their mental health policy, as it resulted in a pattern of similar failures to prevent "obvious and preventable injuries" to inmates. [*Id.* ¶ 63.] Accordingly, Plaintiff has stated a *Monell* claim against the County of San Diego, and Defendants' motion to dismiss Plaintiff's § 1983 claim is **DENIED**.

### c. Negligence Claim Against All Defendants

Plaintiff's third cause of action alleges that Defendants were negligent in their failure to protect Plaintiff from known assaultive inmates, and in their failure to summon adequate medical care when on notice that an inmate needed such care. [Doc. No. 6 ¶¶ 71-72.] Ordinary negligence "consists of a failure to exercise the degree of care in a given situation that a reasonable person under similar circumstances would employ to protect others from harm." *City of Santa Barbara v. Superior Court*, 161 P.3d 1095, 1099 (Cal. 2007). To establish a cause of action for negligence, a plaintiff must show (1) a legal duty to use due care, (2) a breach of such legal duty, and (3) that the breach is the proximate or legal cause of the resulting injury. *Kesner v. Superior Court*, 384 P.3d 283, 290 (Cal. 2016).

As discussed above, Plaintiff adequately alleges that Gustafson and DOE deputies had a duty to protect him from violence at the hands of other inmates, that they failed to

fulfill that duty despite being on notice of Harmon's increasing aggression, and that their failure to take reasonable steps to prevent or intervene in Harmon's attack resulted in Plaintiff's injuries. Plaintiff also plausibly alleges that DOE nurses had a duty to provide him with adequate medical care while he was in custody, that they failed to summon the surgical intervention and daily wound care needed for Plaintiff's wound to properly heal, and that this failure to provide adequate care resulted in Plaintiff suffering two infections and permanent scarring. Further, because a public entity is "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment," CAL. GOV'T CODE § 815.2(a), the County of San Diego is responsible for the deputies' and nurses' negligent acts occurring within the scope of their employment at the Central Jail. Accordingly, Plaintiff has plausibly stated a negligence claim against all Defendants, and Defendants' motion to dismiss the negligence claim is **DENIED**.

### d. Intentional Infliction of Emotional Distress Claim Against All Defendants

Finally, Plaintiff's fourth cause of action alleges that Defendants are liable for intentional infliction of emotional distress resulting from the attack Plaintiff suffered while in Defendants' custody. [Doc. No. 6 ¶¶ 78-84.] To establish a claim for intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009) (internal quotations omitted). A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* "Severe emotional distress" refers to distress "of such substantial [ ] or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.*

Plaintiff alleges that Defendants' conduct was extreme and outrageous because (1) the deputies were on direct notice that Harmon was an assaultive threat to other inmates,

yet placed him in general population housing anyway; (2) the deputies "ignored the pleas and screams from other inmates during the attack, and waited fifteen minutes to interfere despite Deputy Gustafson watching on the monitors"; (3) various deputies took pictures posing with Plaintiff's cheek after the incident "as if it was a trophy"; and (4) after the surveillance video of the attack was circulated among deputies' private cell phones, several deputies commented to Plaintiff that the video of the attack was a "doozy" and that Plaintiff could have put up a better fight. [Doc. No. 6 ¶¶ 80-81.]  Plaintiff claims that due to Defendants' conduct, he suffered and sought treatment for emotional and mental distress, including "intrusive thoughts, nightmares, flash backs, night sweats, loss of appetite, and lethargy." [*Id.* ¶ 10.]  Plaintiff also claims he "reflects back on the humiliation he felt" resulting from the jail deputies taunting him about the surveillance footage of the attack and posing with the portion of his cheek on the floor. [*Id.*]  Plaintiff's allegations, taken as true, are sufficient to state a plausible claim entitling him to relief for intentional infliction of emotional distress.  Further, the County of San Diego may be held liable for the tortious acts of its employees occurring within the scope of their employment.  CAL. GOV'T CODE § 815.2(a).  Therefore, Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress against all Defendants is **DENIED**.

### e. Defendant's Qualified Immunity Defense

Defendants argue that Gustafson is entitled to qualified immunity from liability because his alleged conduct did not violate clearly established law. [Doc. No. 8-1 at 18.] Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident." *Castro*, 833 F.3d at 1066 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  A right is clearly established when the "contours of the right [are] sufficiently

clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1067 (citing *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)).

The Supreme Court has long recognized that inmates have a clearly established "right to be free from violence at the hands of other inmates." *Id.*; *see also Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."). The "contours" of that right require "only that the individual defendants take reasonable measures to mitigate the substantial risk to [the inmate]." *Castro*, 833 F.3d at 1067. Thus, a prison official violates the inmate's right if he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009)). As discussed above, Plaintiff has plausibly alleged that Defendants Gustafson and DOE Deputies were aware that Harmon posed a substantial risk of serious harm to Plaintiff and all other inmates in general population housing, yet they failed to take reasonable measures to mitigate that risk. Taking Plaintiff's allegations as true, Defendants violated Plaintiff's clearly established constitutional right to protection from violence at the hands of other inmates. Accordingly, Defendants' argument that Gustafson is shielded from liability by a qualified immunity defense fails at this stage of the proceedings.

### f. Defendant's Motion to Strike Under FRCP 12(f)

Federal Rule of Civil Procedure 12(f) provides that upon a party's motion or of its own accord, the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. FED. R. CIV. P. 12(f). Defendants argue that Plaintiff's references in the FAC to the report published by Disability Rights California [Doc. No. 6 ¶¶ 44-45] and to various suicides that occurred in County jails [*Id.* ¶¶ 48-62] should be stricken as immaterial and impertinent to the present case. [Doc. No. 8-1 at 26-27.] First, the report cited by Plaintiff entitled "A System Failing People with Mental Illness" directly relates to his allegation that the County has inadequate programs in place to support inmates with mental illness. Second, although this case does not involve a suicide, Plaintiff's references to the publicly reported suicides support his claim that the

County's policy regarding inmates' mental health issues and treatment is inadequate to protect those in custody. Therefore, the Court **DENIES** Defendants' motion to strike paragraphs 44-45 and 48-62 of the FAC.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the FAC is **DENIED**. Defendants shall file an answer to the FAC on or before **March 8, 2021**.

It is **SO ORDERED**.

Dated:  February 16, 2021

_____
Hon. Cathy Ann Bencivengo
United States District Judge